# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

FLINT AUTO AUCTION, INC., and
WILLIAM DONALD GLASCO,

    Plaintiffs,

vs.

UNIVERSAL UNDERWRITERS
INSURANCE COMPANY, RONALD
McDANIEL and RUTH McDANIEL,

    Defendants.

Case No.: 4:12-cv-14793
Hon. Gershwin A. Drain

_____

| | |
|---|---|
| Mark E. Morley (P17971) | Peter B. Kupelian (P31812) |
| Secrest Wardle | Douglas M. Chapman (P64469) |
| Attorney for Plaintiffs | Clark Hill PLC |
| 2600 Troy Center Drive | Attorneys for Defendant Universal |
| P.O. Box 5025 | Underwriters Insurance Company |
| Troy, MI 48007-5025 | 500 Woodward Avenue, Suite 3500 |
| (248) 851-9500 | Detroit, MI 48226 |
| | (313) 965-8300 |

_____

# REPLY BRIEF IN SUPPORT OF UNIVERSAL UNDERWRITERS INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56(a)

_____

I.  REPLY ARGUMENT

A.  Bridge Valley Did Not Own The Vehicle At The Time Of The Subject Incident.[1]

Plaintiffs' purported evidence of Bridge Valley's ownership of the Subject Vehicle at the time of the Subject Incident consists of an affidavit and a screenshot of information from Flint Auto that says "TNP," which Plaintiffs state means "Title Not Present." According to Flint Auto's own Arbitration Guidelines, it is not uncommon for vehicles to be sold "Title Not Present" at Flint Auto's auctions. Exh. X at page 3, Section 12. When vehicles are sold "Title Not Present," they are sold, full stop. *Id*. The seller must present negotiable title within two weeks. *Id*. If the seller does not do so, "the buyer can make special arrangements to return the vehicle and *void the sale*." *Id*. at Section 12.A.3 (emphasis added). In other words, the sale has been consummated, but can be voided at a later date.

Moreover, Flint Auto's own documents establish that the Subject Vehicle was sold to LCC on June 23, 2010 "Title Not Present." Exh. Y. The documents also establish that Flint Auto received the title from Bridge Valley on July 6, 2010, within two weeks of the date of sale of the Subject Vehicle. *Id*. Thus, the

---

[1] Ownership and permission are legal conclusions best left to the trier of ultimate fact in the Underlying Lawsuit. This Court's determination of ownership and permission issues at this time is unnecessary for the reasons stated in UUIC's Opening Brief ("O.B."). However, to the extent this Court decides these ultimate issues, then UUIC has no liability because at the time of the Subject Incident Lane Car Company, LLC ("LCC") owned the Subject Vehicle.

1

condition the Arbitration Guidelines place on sellers, that title be delivered within two weeks of the sale, was met. At least based on Flint Auto's Arbitration Guidelines, LCC could not void the sale for lack of title.

Finally, on the date of the Subject Incident, *prior to the Subject Incident*, Bridge Valley had already transferred to LCC, all "right, title and interest" in the Subject Vehicle and had delivered possession of the Subject Vehicle to Flint Auto, LCC's agent. Exh. Z. LCC and Bridge Valley both executed a contract that included a title warranty and had Bridge Valley as "transferor" and LCC as "transferee" ("Title Document"). *Id*. The Title Document specifically stated "the undersigned does hereby sell, transfer, and deliver unto the below transferee his right, title and interest in this vehicle." *Id*. Per this document, Flint Auto "does hereby guarantee title to the above vehicle sold this date by the seller to the buyer through Flint Auto Auction, Inc.'s dealer auction." *Id*. Furthermore, both parties (Bridge Valley and LCC) agree that 1) Flint Auto is acting as their mutual agent and that 2) "this instrument shall act not only as a contract between the Buyer and Seller, when executed by them, but shall also be a contract between the auction and each of the said parties insofar as the responsibilities of the auction are concerned, as soon as signed by either the Buyer or Seller." *Id*. Put simply, Bridge Valley had already delivered the vehicle to Flint Auto, LCC's agent, and transferred title

to LCC, prior to the Subject Incident.[2]

Accordingly, LCC was the owner of the Subject Vehicle at the time of the Subject Incident. *See, e.g.*, MCL 257.233(9); *Perry v. Golling Chrysler Plymouth Jeep, Inc.*, 477 Mich. 62, 66-67 (2007) [Transfer of title requires execution]. Because, in Plaintiffs' theory, UUIC's liability depends upon Bridge Valley's ownership of the Subject Vehicle at the time of the Subject Incident, UUIC has no liability to Plaintiffs and UUIC is entitled to summary judgment.

**B.** ***Werner* And The Other Cases On Which Plaintiffs Rely Are Inapplicable.**

As UUIC predicted, Plaintiffs' opposition is largely based on *Werner v. Travelers Indem. Co.*, 55 Mich. App. 390 (1974). For the reasons stated in UUIC's opening brief, Werner is inapplicable and of no utility to Plaintiffs, and actually supports UUIC's position. *See* UUIC's O.B. at pp. 16-17. Plaintiffs further rely on *State Farm Mut. Auto. Ins. Co. v. Enterprise Leasing Co.*, 452 Mich. 25 (1996) to support their claim that UUIC is primary with the sole duty to defend Plaintiffs in the Underlying Lawsuit. Plaintiffs' reliance on *Enterprise Leasing* is misplaced.

*Enterprise Leasing* involved a self-insured car rental company that, in its rental agreement, purported to eliminate entirely its responsibility to provide residual liability insurance coverage to permissive users of the company's owned

---

[2] The Subject Incident occurred during the arbitration stage of the proceedings, which necessarily occurred after the Title Document was executed by both parties.

3

automobiles, and purported to shift that responsibility unilaterally to the renter's insurer. *Enterprise Leasing, supra* at 28-29. The Michigan Supreme Court ultimately held that "car rental companies must provide primary insurance coverage for liability arising out of the use of their vehicles." *Id*. at 32. In reaching its holding, the Court recognized that the issue was controlled by the Michigan No-Fault Act, MCL 500.3101 et seq. ("Act"), the Act's requirement that vehicle owners provide residual liability insurance coverage for the use of their vehicles, the intent of the Act (to provide an available fund of compensation for injured persons), and, most importantly, by the language of the rental agreement, which purported to eliminate entirely the car rental company/owner's responsibility for residual liability coverage for permissive users. *Id*. at 33-36. The Court followed the reasoning of its prior decision, in which an insurance company purported to exclude all coverage for residual liability to permissive users, and held that such exclusions or eliminations of liability violated the intent of the Act. *Id*. at 33-36, discussing *Citizens Ins. Co. v. Federated Mut. Ins. Co.*, 448 Mich. 225, 227 (1995).

This matter does not involve rental car companies and does not involve a rental agreement that purports to eliminate all responsibility for residual liability coverage for permissive users. It does not even involve an insurance policy that purports to exclude or eliminate such coverage. Instead, the UUIC Policy actually

4

provides residual liability coverage for permissive users of vehicles owned by Bridge Valley, up to the statutory minimum in limits. *See* UUIC's Exh. M at 500-10 and -22. Because the UUIC Policy provides such coverage, and does not exclude it entirely, *Werner*, *Citizens*, *Enterprise Leasing*, and their progeny are of no utility to Plaintiff. Instead, the policies of both UUIC and FMIC arguably apply, and per the policy language, each agrees to apply in a certain manner when "other insurance" is available. Michigan law interpreting that language would require them to apply on a pro-rata basis. *See* UUIC's O.B., Section IV.B.

Even if *Enterprise Leasing* were applicable, it is based on the Act. The Act requires residual liability coverage up to a maximum of $20,000. MCL 500.3131(2) [Describing "residual liability coverage" and stating "[t]his section shall not require coverage in this state other than that required by section 3009(1)."]. MCL 500.3009 says nothing about an insurer's duty to defend its insured, nor should it; the Act is concerned with providing compensation to injured parties. Thus, although the Act may control the priority of FMIC's and UUIC's respective duties to indemnify Plaintiffs, in the absence of controlling language in the Act regarding the duty to defend, the issue of FMIC's and UUIC's respective duties to defend Plaintiffs are controlled by contract. *See, e.g., Rohlman v. Hawkeye-Sec. Ins. Co.,* 442 Mich. 520, 524-525 (1993) [The No-Fault Act is "the 'rule book' for deciding the issues involved in questions regarding awarding (no-

5

fault) benefits. On the other hand, the insurance policy itself, which is the contract between the insurer and the insured, controls the interpretation of its own provisions providing benefits not required by statute."]; *Cohen v. Auto Club Ins. Ass'n*, 463 Mich. 525, 532 (2001). As previously established, to the extent UUIC has a duty to defend, the respective insurance contracts would therefore require both UUIC and FMIC to share in the defense.

### C. UUIC Is Not Liable For Pre-Defense Request Fees And Costs.

UUIC has no duty to reimburse any entity for fees or costs incurred to defend Plaintiffs against the Underlying Lawsuit prior to the date they requested a defense from UUIC. Plaintiffs reference a purported verbal tender in February 2012, but have presented no evidence establishing such a tender was made, and UUIC denies the request was made to it. *See* UUIC's Exh. O and attached Exh. AA. Ultimately, whatever the date Plaintiffs requested UUIC defend them, and even if UUIC has the sole duty to defend, UUIC is not obligated to reimburse them or FMIC for any pre-request fees or costs.

### D. UUIC's Maximum Indemnity Liability Is $20,000.

Plaintiffs contend that UUIC is obligated to indemnify Plaintiffs up to the UUIC Policy's limits of $1,000,000 per occurrence. However, per Michigan statute, UUIC is only obligated to provide residual liability coverage to permissive users in the amount of $20,000 per injured person. MCL 257.520(b)(2); MCL

6

500.3009.  The UUIC Policy does exactly that, and is not required to do more.

*Enterprise Leasing* does not change this conclusion because *Enterprise Leasing* involved a self-insured, and self-insureds have unlimited liability. *Enterprise Leasing, supra* at 33-36; *see also Enterprise Leasing Co. v. Sako*, 233 Mich. App. 281, 284 (1998) ["A self-insured's liability extends to the full value of its assets.  A company that prefers to avoid unlimited risk has the option of purchasing a commercial insurance policy."].  The UUIC Policy is a commercial insurance policy, and UUIC's risk is permissibly limited to what Michigan statute requires.  *See, e.g., Ryder Truck Rental, Inc. v. Auto-Owners Ins. Co., Inc.*, 235 Mich. App. 411, 415-416 (1999).  Accordingly, UUIC is entitled to summary judgment as a matter of law that its duty to indemnify Plaintiffs, to the extent one ultimately exists, is limited to $20,000.

Respectfully submitted,

CLARK HILL PLC

By: s/Douglas M. Chapman
Peter B. Kupelian (P31812)
Douglas M. Chapman (P64469)
Attorneys for Defendant
500 Woodward Avenue, Suite 3500
Detroit, MI 48226
(313) 965-8300
pkupelian@clarkhill.com
dchapman@clarkhill.com

Dated: August 29, 2013

7

## **CERTIFICATE OF SERVICE**

 I hereby certify that on August 29, 2013, I electronically filed the foregoing paper with the Clerk of the court using the ECF system which will send notification of such filing to all attorneys of record.

            Respectfully submitted,

            CLARK HILL PLC

            By: s/Douglas M. Chapman
            Peter B. Kupelian (P31812)
            Douglas M. Chapman (P64469)
            Attorneys for Defendant
            500 Woodward Avenue, Suite 3500
            Detroit, MI 48226
            (313) 965-8300
            pkupelian@clarkhill.com
            dchapman@clarkhill.com

Dated: August 29, 2013

9323973.1 39808/157453